ONESIME J. BOLDUC
*vs.*
LINWOOD J. PINKHAM, ET AL.

Kennebec. Opinion, May 13, 1952.

*Jerome G. Daviau,* for Plaintiff.

*Arthur Levine,* for Defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, JJ. WILLIAMSON, J. did not sit.

MURCHIE, C. J. The plaintiff in this Bill in Equity, according to factual allegations carried in his amended process, admitted to be true by defendants' demurrer, *Brown* v. *Guy Gannett Publishing Co.*, 147 Me. 3, 82 A. 2d. 797; *Lea* v. *Robeson*, 12 Gray, 280; Whitehouse Equity Practice, Sec. 213 (Vol. I, Page 393), is, and has been for a long time, engaged in the bakery business in the City of Waterville, and is the owner of a tract of land therein, having a frontage on Grove Street, which he purchased in 1945 for the express purpose of building a bakery thereon. Additional factual allegations, so admitted, are that the erection of a building on said land in the time intervening between his acquisition of it and the enactment of a Zoning Ordinance by said City, the pertinent provisions of which will be noted hereafter, was impossible because of post-war shortages and economic conditions entirely beyond his control, and that enforcement of the ordinance, without recognition that the plaintiff is entitled to an exception or variance from its regulations, will reduce the market value of said land and destroy its marketability.

The defendants are Linwood J. Pinkham, the Building Inspector of the City of Waterville, and said City. The prayers of plaintiff's process are that the defendants, their agents, employees and attorneys, be restrained from enforcing said Zoning Ordinance against the plaintiff and his property aforesaid. The case is brought forward for review on plaintiff's exceptions to a ruling sustaining the defendants' demurrer and dismissing the process.

The grounds on which plaintiff seeks the relief claimed are that the Zoning Ordinance, if enacted within the authorization carried in the enabling legislation under which the City purported to act when adopting it on April 6, 1948,

R. S. 1944, Chap. 80, Secs. 84 to 89 inclusive, is unconstitutional, because it violates the Fifth and the Fourteenth Amendments to the Constitution of the United States and some unspecified provision of the Constitution of this State, and that it is void and of no effect, without reference to the question of constitutionality, because it does not define the lines or limits of the zones intended to be established by its terms with sufficient clarity to permit a property owner to determine whether his land is in or out of any particular zone, and fails to make proper provision for "exceptions and variances."

We deal with the constitutional question first, notwithstanding the principle that such questions should not be resolved unless essential to the decision of a case, *Payne* v. *Graham,* 118 Me. 251, 107 A. 709, 7 A.L.R. 516; *Morris* v. *Goss,* 147 Me. 89, 83 A. 2d. 556, because neither the Fifth Amendment to the Constitution of the United States nor the Constitution of this State contains any provision infringed by the enabling legislation, and the Supreme Court of the United States, in decisions binding upon this Court, *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016; *Zahn* v. *Board of Public Works,* 274 U.S. 325, 47 S. Ct. 594, 71 L. Ed. 1074, has declared that the Fourteenth Amendment to the Constitution of the United States does not prohibit zoning legislation in the states. The binding force of decisions of that Court in the construction of the Federal Constitution, on this Court, has always been recognized. *State* v. *Furbish,* 72 Me. 493; *State* v. *Intoxicating Liquors,* 102 Me. 385, 67 A. 312, 120 Am. St. Rep. 504.

The dual grounds asserted for the claim that the Zoning Ordinance, as enacted, does not meet the requirements of the enabling legislation must be determined by reference to its provisions. A copy of it is attached to the amended process as an Exhibit. It purports to divide the City into

Residence, Commercial and Unrestricted zones without defining the lines which divide or outline them otherwise than by reference to a plan incorporated in it by the recital that it is:

> "dated April 1948 and filed in the office of the City Clerk,"

and to establish regulations under which no business other than a few enumerated ones, which do not include the bakery business, shall be carried on in a Residence zone, and that none of several enumerated kinds, which again do not include the bakery business, shall be conducted in a Commercial zone, except so far, in each instance, as shall be permissible as a "non-conforming use," under a provision which recognizes that property devoted to any business at the time of the enactment of the ordinance may be so devoted without interruption until abandoned or discontinued, and that the right to continue it shall not be terminated by the destruction of any building involved if reasonable expedition is used in the replacement or reconstruction of it.

The ordinance designates the Building Inspector as the official charged with its enforcement, and constitutes a Board of Zoning Adjustment to administer it, and hear and determine appeals from the granting or refusal of building permits. It specifies that said Board shall have its office "in the office of the Mayor." It carries no general rules for the guidance of said Board in performing its appeal function, or for permitting "exceptions and variances," except so far as they are authorized under the provisions concerning non-conforming uses. Plaintiff's appeal to said Board was denied on the ground that it had no authority to grant a variance.

The plaintiff's claim that the ordinance was not enacted within the authorization of the enabling legislation because of the omission of any provision for exceptions and variances, as such, is grounded in his asserted right to have a

variance, as a matter of law, because his purchase of the property in question was made prior to the enactment of the ordinance and because of his intention, at the time, to erect a bakery thereon. It is obvious that he can have no greater or other right than his predecessor in title would have had if the property had not been sold to him, or than that of the owners of any and all property abutting his, which lies within the same zone. The fundamental purpose of zoning legislation, to create and maintain residential districts from which businesses and trades of any and every sort would be excluded, ultimately, would be defeated if plaintiff's claim could be asserted successfully. The ordinance gives full protection to uses which were in operation at the time of its enactment. It is not fatal to its validity that no further or other provision for exceptions and variances is contained in it. The mandatory provision of the enabling legislation with reference to exceptions and variances, as originally enacted, P. L. 1943, Chap. 199, Sec. 5, was made directory by the amendment of R. S. 1944, Chap. 80, Sec. 88, where the original section now appears, carried in P. L. 1947, Chap. 109.

Plaintiff's claim that the ordinance is invalid because the lines of the zones are not defined with clarity is asserted on the ground that no map such as is identified by its recital:

"was filed in the office of the City Clerk at the time of the enactment of the (this) ordinance * * * and * there is not now in fact any such zoning map filed in the City Clerk's office."

The allegation to this effect is supplemented by that heretofore noted, that property owners are unable to determine whether particular parcels are "in or out" of any particular zone. The latter allegation can have no bearing on this case, where the ordinance imposes no regulation upon the use of property for the business in which the plaintiff is engaged, except in a Residence zone, and his application for a build-

ing permit discloses his knowledge that his property is in such a zone. Moreover, his allegation that that application was for a building of specified size and materials:

"two stories with front elevation adapted to zoning requirements,"

indicates that he must have been aware of the "requirements" within the zone in which his property is located.

The admission of the defendants, carried by their demurrer, that no zoning map was filed, in the place designated for its filing, at the time of the enactment of the ordinance, and that none is on file there at the present time, or when the demurrer was filed, would be troublesome if this Court had not had occasion in the recent case of *Toulouse* v. *Board of Zoning Adjustment,* 147 Me. 387, 87 A. (2nd) 670, to examine a copy of the map which locates the lines of the zones established by the ordinance. Whether the explanation lies in the fact that the Board of Zoning Adjustment, constituted as the board of appeals required to be established by the terms of the enabling legislation, has filed the zoning map which governs its action in its own office, which is in that of the Mayor of the City, as heretofore noted, we cannot say on the present record. Whatever the fact, the plaintiff is not in ignorance, as he alleges, in effect, about the location of his property with reference to the pertinent zone lines.

*Exceptions overruled.*

*Decree below affirmed.*