STATE of Maine

v.

**Robert C. BOUCHARD.**

Supreme Judicial Court of Maine.

Argued Jan. 8, 1985.

Decided March 26, 1985.

John D. McElwee, Dist. Atty., Neale Adams, Asst. Dist. Atty. (orally), Houlton, for plaintiff.

Daniel G. Lilley, Rose L. Duggan (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Robert Bouchard, the defendant, appeals from a judgment of the Superior Court (Aroostook County) entered on the jury's verdict finding him guilty of arson in violation of 17–A M.R.S.A. § 802 (1983). On the

day of trial, defense counsel made an oral motion, under M.R.Crim.P. 41A, to suppress a statement made by defendant to a police detective. The presiding Justice ruled that the motion was untimely.[1] Defendant argues on appeal that his statement is inadmissible, and alternatively, that it should not have been introduced in the State's case in chief. We find no error and deny the appeal.

## I.

On May 18, 1983, in Van Buren, an apartment building owned by defendant was totally destroyed by fire. The building was unoccupied and had been listed for sale with a realtor. Defendant testified that he probably would have accepted an offer of $10,000 for the building a day or week before the fire. Within a few weeks before the fire, defendant personally had begun to make repairs on the building, repairs which he estimated as costing $400–$500. Defendant testified that he left several gallons of paint, some paint reducer and about ½ gallon of gasoline in the building on May 18. In addition, defendant stated that the furnace was operating when he left the building on May 18. A person living near defendant's building testified that at about 9:00 p.m. on May 18 she noticed her house shaking, heard an explosion, saw a big ball of fire coming out of defendant's building, and then saw what "looked like a person running with his arms out and his arms on fire."

Defendant testified he was absent from Van Buren at the time of the fire. According to him, he and his friend Gerry Pelletier left Van Buren at about 6:00 p.m. on May 18, for a fishing trip in the Allagash. Mr. Pelletier, however, denied that he accompanied the defendant. Moreover, he testified that the defendant told him he needed an alibi witness. Defendant testi-

fied that he and Mr. Pelletier reached the Allagash at about 8:30 p.m. and camped there overnight. Defendant stated that on the morning of May 19, while attempting to light a Coleman stove, he caught on fire and suffered first and second degree burns when the stove blew up. He then returned home where he learned of the fire at the apartment building. He claimed to have stayed at home for a couple of hours before he allowed himself to be taken to the Cary Medical Center in Caribou. Later that day, defendant was transferred to the Maine Medical Center (the "MMC") in Portland. The MMC discharge summary contains the "Coleman stove" explanation for defendant's burns which covered approximately 30% of his body, including his face, arms, back, buttocks, and legs. He was discharged on the 15th hospital day.

On May 24, while defendant was still in the MMC confined to bed, Maine State Police Detective Peter Herring interviewed the defendant about the cause of his burns. The detective testified that he identified himself, and that defendant indicated that he was willing to talk. The detective asked defendant to recount "the circumstances of how he received his injuries" but did not advise defendant of his *Miranda* rights. Defendant told the detective about the camping trip and the exploding stove.

Defendant testified for the record on the suppression motion that he was being fed intravenously and felt drowsy during the questioning. He also testified that he remembers someone coming into his room and talking about the fire, but defendant was not "one hundred percent sure" that person was a policeman. Also defendant apparently had his bandages changed a short time before the questioning.

On June 28, 1983, defendant and his wife filed a proof of loss with their insurance

---

1. Defense counsel attempted to preserve the issue by making an offer of proof that included the testimony of defendant and the detective. For purposes of the offer of proof, the court ruled that defendant's statement was made in a non-custodial setting, and that *Miranda* warn- ings were not required. Although the presiding Justice did not expressly find that the statement was voluntary, he ruled the statement was admissible, even if it had been challenged in a timely manner.

company seeking to recover on his fire insurance policy. The amount claimed was $15,000, the amount of the policy. The insurance adjuster testified that defendant told him about the camping trip and the exploding stove.

At a jury trial in March 1984, defendant was found guilty of arson and now appeals his conviction.

## II.

On the day of the trial, for the first time, defense counsel orally moved to suppress defendant's statement to Detective Herring on the grounds that the statement was made involuntarily and in violation of defendant's *Miranda* rights. M.R.Crim.P. 41A(b) provides that a motion to suppress an illegally obtained statement "shall be made before trial or hearing. If opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, the court in its discretion may entertain the motion at the trial or hearing." Apparently relying on *State v. Bishop*, 392 A.2d 20 (Me.1978), the Superior Court ruled that defendant's motion was "too late."

In *Bishop*, we held that a motion for return and suppression of illegally seized property, pursuant to Rule 41(e) must be made before trial or hearing. As defendant notes, we decided to apply the *Bishop* ruling only prospectively. *See Bishop*, 392 A.2d at 22, 24. In his brief, defendant argues that the *Bishop* holding has not been extended to testimonial evidence, and that if the Law Court were to rule that motions to suppress illegally obtained testimonial evidence had to be made before trial, the Court should do so only prospectively because counsel relied on the Court's "past reluctance to make such an extension." *See generally State v. Taylor*, 438 A.2d 1279, 1281 (Me.1982) (reserving issue whether motion to suppress testimonial evidence must be made before trial).

After defendant's brief was written, this Court decided *State v. Beathem*, 482 A.2d 860 (Me.1984). *Beathem* held that when a defendant seeks to suppress a confession made after an allegedly illegal seizure of his person, he is "obligated to make his motion before trial or hearing, unless the opportunity did not then exist or the defendant was not aware of the grounds for the motion. M.R.Crim.P. 41A." *See Beathem*, 482 A.2d at 862. The Court's holding in *Beathem* was not limited to prospective application for "Rule 41A resolves any uncertainty and unequivocally requires that defendant's challenge be raised by pretrial motion. *See* M.R.Crim.P. 41A advisory committee's notes to 1983 amend., Me. Rptr. 449–458 A.2d LXXXVI–LXXXVII." *See id.*

■ Rule 41A(b) states that the motion to suppress "shall be made before trial or hearing." In the present case, defense counsel first brought the motion to suppress to the Court's attention on the day of the trial. A motion made on the day of trial is untimely. *See State v. Taylor*, 438 A.2d at 1281; *State v. Vose*, 402 A.2d 869, 870 (Me.1979). In addition, the two exceptions in 41A(b) that permit a court to entertain motions at trial or hearing are inapplicable in this case because the defendant was aware of the grounds for the motion and had the opportunity to raise the motion before trial or hearing.

Before finally deciding that defendant failed to make a timely objection to the admission of his statement, we must consider one argument that defendant failed to raise. Namely, do Rule 41A's requirements relating to motions to suppress illegally obtained statements apply to involuntary statements? Arguably, involuntary statements could be distinguished, for the purposes of Rule 41A, from other statements obtained illegally, on the grounds that involuntary statements are inherently unreliable while the same cannot be said for statements obtained in violation of *Miranda* rights or as the fruit of an unlawful arrest or seizure. Therefore, the argument could be made that the failure to object, before or during trial, to the use of an allegedly involuntary statement cannot constitute a waiver.

**520**

We reject this argument on two grounds. First, the reference in Rule 41A(a) to "illegally obtained" statements is broad enough to include involuntary statements at least when obtained by law enforcement officers. Second, lack of trustworthiness is not the sole basis for the exclusion of an involuntary confession. *See Lego v. Twomey,* 404 U.S. 477, 485, 92 S.Ct. 619, 624, 30 L.Ed.2d 618 (1972). Rather, "[t]he use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles." *Id. See also State v. Mikulewicz,* 462 A.2d 497, 500 (Me.1983); *State v. Collins,* 297 A.2d 620, 634 n. 13 (Me.1972).

Because we find that this motion to suppress an allegedly involuntary statement was required to be made before trial pursuant to Rule 41A(b), we conclude that the untimeliness of the motion to suppress constituted a waiver of defendant's right to have the statement suppressed on grounds of involuntariness or violation of *Miranda* rights.

In any event, even if defendant's statement to Detective Herring should have been found to have been inadmissible, admission of the statement was harmless error. *See* M.R.Crim.P. 52(a). Defendant made a nearly identical statement to his insurance adjuster who testified to the details of his conversation with defendant.

### III.

Finally, defendant argues that his statement was hearsay evidence and was inadmissible in the State's case in chief. We disagree. Barring cognizable objections based on involuntariness, or violation of *Miranda* rights, the statement is not hearsay and was admissible in the State's case as an admission by a party-opponent. *See* M.R.Evid. 801(d)(2)(A).

Therefore, the entry is:

Judgment affirmed.

All concurring.